**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:18-cv-00239-MJG |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

## DEFENDANTS' MOTION TO STAY OR, IN THE ALTERNATIVE, TO CONFINE DISCOVERY TO THE ADMINISTRATIVE RECORD

## <u>TABLE OF CONTENTS</u>

FACTUAL AND PROCEDURAL BACKGROUND ............................................................. 1

   I.   *Ramos* litigation ............................................................................................. 1

   II.   *NAACP* and other TPS litigation .................................................................. 3

ARGUMENT ................................................................................................................... 5

   I.   Acting Secretary Duke's determination ending TPS for Haiti is already enjoined, so this duplicative litigation would consume judicial and party resources with no offsetting gains for Plaintiffs. ................................................................. 5

      A.   A stay would promote judicial efficiency and serve the public interest. ................ 6

      B.   A stay would not harm Plaintiffs. ........................................................ 7

      C.   The Government would be needlessly burdened absent a stay. ........................... 10

   II.   Absent a stay, this Court's review should be limited to the administrative record. ........................................................................................................ 10

   III.   Even if, *arguendo*, the Court finds extra-record discovery appropriate, any such discovery should be narrow in scope. ............................................................... 14

CONCLUSION .............................................................................................................. 15

# TABLE OF AUTHORITIES

## Cases

*Ali v. Pompeo*,
　No. 16-CV-3691-KAM-SJB, 2018 WL 2058152 (E.D.N.Y. May 2, 2018)........................ 14

*Allstate Ins. Co. v. Hemingway Homes LLC*,
　No. 12-CV-00744-AW, 2012 WL 4748089 (D. Md. Oct. 3, 2012) ........................ 6

*Amfac Resorts, LLC v. U.S. Dep't of the Interior*,
　143 F. Supp. 2d 7 (D.D.C. 2001)……………………………………………………………14

*Asarco, Inc. v. EPA*,
　616 F.2d 1153 (9th Cir. 1980) ............................................................................. 13

*Benisek v. Lamone*,
　266 F. Supp. 3d 799 (D. Md. 2017), *aff'd*, 138 S. Ct. 1942 (2018)........................ 7

*Bhattarai v. Nielsen*,
　No. 3:19-cv-731-EMC (N.D. Cal.)……………………………………………………4, 5

*Califano v. Sanders*,
　430 U.S. 99 (1977).............................................................................................. 13

*Casa de Maryland v. Trump*,
　No. 8:18-CV-845-GJH (D. Md.)……………………………………………………………5

*Catskill Mountains Chapter of Trout Unlimited, Inc. v. EPA*,
　630 F. Supp. 2d 295 (S.D.N.Y. 2009)...................................................................... 6

*Centro Presente v. Trump*,
　No. 1:18-CV-10340 (D. Mass.)……………………………………………………………4

*Chiayu Chang v. USCIS*,
　254 F. Supp. 3d 160 (D.D.C. 2017) ..................................................................... 11

*Chruby v. Global Tel*Link Corp.*,
　119 F. Supp. 3d 395 (E.D. Va. 2015) ..................................................................... 7

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
　401 U.S. 402 (1971)...................................................................................... 13, 15

*Clinton v. Jones*,
　520 U.S. 681 (1997)............................................................................................. 5

*Common Sense Salmon Recovery v. Evans*,
　217 F. Supp. 2d 17 (D.D.C. 2002) ....................................................................... 13

*Cunningham v. Homeside Fin., LLC*,
  Civ. No. MJG-17-2088, 2017 WL 5970719 (D. Md. Dec. 1, 2017) ....................................... 5

*Department of Commerce v. U.S. District Court for the Southern District of New York*,
  No. 18-966, 2019 WL 5595998 (U.S. 2019) ......................................................................... 11

*Evans v. Salazar*,
  2010 WL 11565108 (W.D. Wash. July 7, 2010) ................................................................. 12

*Fla. Power & Light Co. v. Lorion*,
  470 U.S. 729 (1985)............................................................................................................ 12

*Harkness v. Sec'y of Navy*,
  858 F.3d 437 (6th Cir. 2017), *cert. denied*, 138 S. Ct. 2648 (2018) (mem.) ......................... 12

*Int'l Jr. Coll. of Bus. & Tech., Inc. v. Duncan*,
  937 F. Supp. 2d 202 (D.P.R. 2012), *aff'd*, 802 F.3d 99 (1st Cir. 2015) ........................... 14-15

*IRAP v. Trump*,
  323 F. Supp. 3d 726 (D. Md. 2018) ..................................................................................... 7

*Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv.*,
  58 F. Supp. 3d 1191 (D.N.M. 2014) ................................................................................... 12

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936)............................................................................................................. 5

*Mey v. Got Warranty, Inc.*,
  No. 5:15-CV-101, 2016 WL 1122092 (N.D. W. Va. Mar. 22, 2016) ..................................... 7

*Milanes v. Chertoff*,
  No. 08 Civ. 2354(LMM), 2008 WL 2073420 (S.D.N.Y. May 13, 2008)............................. 15

*Naegele v. Albers*,
  940 F. Supp. 2d 1 (D.D.C. 2013) ......................................................................................... 7

*Nat'l Nutritional Foods Ass'n v. FDA*,
  491 F.2d 1141 (2d Cir. 1974)............................................................................................. 14

*NVE, Inc. v. HHS*,
  436 F.3d 182 (3d Cir. 2006)............................................................................................... 13

*Outdoor Amusement Bus. Ass'n, Inc. v. DHS, Civ. No. ELH-16-1015*,
  2017 WL 3189446 (D. Md. July 27, 2017)......................................................................... 13

*QinetiQ U.S. Holdings, Inc. v. Comm'r of Internal Revenue*,
  845 F.3d 555 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 299 (2017) (mem.) ......................... 13

*Ramos v. Nielsen*,
    336 F. Supp. 3d 1075 (N.D. Cal. 2018) ........................................................................... 2, 6, 8

*Riverkeeper, Inc. v. EPA*,
    No. 06 Civ. 12987(PKC), 2007 WL 4208757 (S.D.N.Y 2007)............................................. 10

*Saget v. Trump*,
    No. 1:18-CV-1599 (E.D.N.Y.)……………………………………………………………....4

*Sam Yang (U.S.A.), Inc. v. ENI Dist., Inc.*,
    Civ. No. JKB-16-2958, 2016 WL 7188447 (D. Md. Dec. 12, 2016) ....................................... 7

*Tafas v. Dudas*,
    530 F. Supp. 2d 786 (E.D. Va. 2008) .................................................................................... 13

*Tastee Treats, Inc. v. U.S. Fid. & Guar. Co.*,
    No. 5:07-cv-00338, 2009 WL 37188 (S.D. W. Va. Jan. 7, 2009) ........................................... 6

*Trikona Advisors Ltd. v. Kai-Lin Chuang*,
    No. 12-CV-3886, 2013 WL 1182960 (E.D.N.Y. Mar. 20, 2013)............................................ 7

*Voyageurs Nat'l Park Ass'n v. Norton*,
    381 F.3d 759 (8th Cir. 2004) ................................................................................................ 14

*Walter O. Boswell Mem'l Hosp. v. Heckler*,
    749 F.2d 788 (D.C. Cir. 1984)............................................................................................... 13

*Yearwood v. Johnson & Johnson, Inc.*,
    Civ. No. RDB-12-1374, 2012 WL 2520865 (D. Md. June 27, 2012) ............................... 6, 10

**Statutes**

5 U.S.C. § 706........................................................................................................................ 11, 12

8 U.S.C. § 1254a(b)(5)(A) ........................................................................................................... 10

**Rules**

F.R.A.P. 40(a)(1) ........................................................................................................................... 8

F.R.A.P. 41(b).................................................................................................................................. 8

Fed. R. Civ. P. 26(a)(1)(B)(i)....................................................................................................... 12

**Regulations**

Continuation of Documentation for Beneficiaries of Temporary Protected Status Designations
for Sudan, Nicaragua, Haiti, and El Salvador,
    84 Fed. Reg. 7,103-01 (Mar. 1, 2019) ............................................................................... 3, 8

Defendants move the Court to stay this action pending final appellate review of the preliminary injunction issued in a parallel matter styled *Ramos v. Nielsen*, No. 3:18-CV-1554 ("EMC"), in the U.S. District Court for the Northern District of California. That court preliminarily enjoined nationwide the challenged decision here, *i.e.*, former Acting Secretary Duke's decision to terminate Temporary Protected Status ("TPS") for Haiti, including on grounds similar to those asserted here. This Court should stay all proceedings pending final appellate review in *Ramos*, including any Supreme Court review, or at least until the disposition of the Government's appeal by the assigned three-judge panel of the U.S. Court of Appeals for the Ninth Circuit. Doing so avoids duplicative litigation, promotes judicial efficiency, and protects the parties from needless burden and expense while causing no prejudice to Plaintiffs.

Should this Court decline to grant the requested stay, Defendants respectfully request that the Court enter an order holding that review of the Haiti TPS determination is confined to the administrative record pursuant to the bedrock principles of record review in Administrative Procedure Act ("APA") cases. Alternatively, if Plaintiffs could somehow show that extra-record discovery is appropriate—and they cannot—any such discovery should be limited to the vast universe of materials already produced in *Ramos* and other TPS cases.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.      *Ramos* litigation

This Court should take account of developments in the parallel *Ramos* litigation. In *Ramos*, on October 3, 2018, the district court issued a nationwide preliminary injunction ordering that Defendants, including Department of Homeland Security ("DHS"), and "all persons acting in concert or participating with them," are "ENJOINED AND RESTRAINED from engaging in, committing, or performing, directly or indirectly, by any means whatsoever, implementation

and/or enforcement of the decisions to terminate TPS for Sudan, Haiti, El Salvador, and Nicaragua pending resolution of this case on the merits." *Ramos v. Nielsen*, 336 F. Supp. 3d 1075, 1108 (N.D. Cal. 2018). The court further ordered that the Government "shall take all administrative actions needed to preserve the status quo pending completion of discovery and a ruling on the merits of the action, including all steps needed to ensure the continued validity of documents that prove lawful status and employment authorization for TPS holders." *Id.* at 1108-09. The *Ramos* preliminary injunction will remain in effect pending final disposition of the Government's appeal of the injunction, or pending further order of the *Ramos* court.

After the Government noticed its appeal in *Ramos*, ECF No. 129, the parties there reached an agreement to stay district court proceedings pending final appellate review of the preliminary injunction, *see Ramos*, ECF No. 137. The district court adopted the parties' proposed stipulation on October 26, 2018, thus staying the district court proceedings. *See Ramos*, ECF No. 138. Pursuant to that stipulated order, no termination of any the countries at issue—including Haiti— can take effect for nearly six months following any decision by a three-judge panel of the Ninth Circuit vacating the preliminary injunction.[1] *See Ramos*, ECF No. 138. The appeal is fully briefed for a three-judge panel of the Ninth Circuit, and that court is considering setting an oral argument date for mid-June or later this summer. *See Ramos*, March 7, 2019 Notice, Case No. 18-16981. Given the potential argument dates identified by the Ninth Circuit, it is extremely unlikely that any termination would be able to take effect this year.

In furtherance of its compliance with the *Ramos* preliminary injunction, DHS published a Federal Register notice on March 1, 2019, announcing that the TPS designation of Haiti (as well

---

[1] The stay is for 120 days after the mandate is issued to the district court but, under the rules of the Ninth Circuit, the mandate would not issue for 52 days after any Ninth Circuit opinion vacating the preliminary injunction.

the TPS designations for Sudan, Nicaragua, and El Salvador) "will remain in effect . . . so long as the preliminary injunction" in *Ramos* "remains in effect."  84 Fed. Reg. 7,103-01, 7,103.  "In the event the preliminary injunction is reversed and that reversal becomes final," the notice explains, "DHS will allow for an orderly transition period, ending . . . 120 days from the effective date of such a superseding, final order[.]  *Id.* at 7,105.[2]  Further, to ensure TPS-related documentation are up-to-date, DHS will issue periodic Federal Register notices.  In particular, approximately thirty days before January 2, 2020, DHS will issue a subsequent Federal Register notice that extends by nine months the appropriate TPS-related documentation for TPS beneficiaries from Haiti (and Sudan, Nicaragua, and El Salvador), and DHS will continue to issue such notices at nine-month intervals so long as the *Ramos* injunction remains in place and the mandate of any decision vacating the injunction has not yet issued to the district court.  *Id.*  Thus, so long as the injunction remains intact, any change in the status quo for Haitians who presently benefit from TPS is, by operation of the policy announced in the March 1 notice, necessarily months away.

## II.   *NAACP* and other TPS litigation

Plaintiffs filed their Complaint in this action on January 24, 2018, ECF No. 1, and the Government moved to dismiss on May 7, 2018, ECF No. 36.  This Court granted in part and denied in part the Government's motion on March 12, 2019, and set a telephonic conference with counsel for April 24, 2019, ECF Nos. 67 & 68.  In its opinion, this Court explained that other TPS litigation is "at varying stages[,]" and that "counsel should be prepared to discuss whether this case presents any unique [legal] issues" at the telephonic conference.  ECF No. 67 at 20.  Given that the

---

[2] The March 1 notice explains that the orderly transition period would end "on the later of (a) 120 days from the effective date of such a superseding, final order, or (b) on the Secretary's previously-announced effective date for the termination of TPS designations for each individual country," which, for Haiti, is July 22, 2019.  84 Fed. Reg. at 7,105.  Because we are within 120 days of the previously scheduled termination date and do not have superseding final judgment, only scenario (a) can now apply.

preliminary injunction order in *Ramos* enjoined the Haiti TPS determination and that the Ninth Circuit will address issues relevant to the instant case, defense counsel initially approached Plaintiffs' counsel shortly after receiving the opinion about potentially staying this matter, but the parties have not been able to reach an agreement.

In addition to *Ramos* and this action, there are four other cases challenging TPS determinations, all of which include Equal Protection and Due Process claims under the Fifth Amendment similar to Plaintiffs' claim here.  Indeed, in two of these actions beyond *Ramos*, the plaintiffs challenge the Haiti TPS determination on Fifth Amendment grounds.  In *Saget v. Trump*, No. 1:18-CV-1599 (E.D.N.Y.), plaintiffs brought, *inter alia*, Fifth Amendment challenges seeking to block the Haiti TPS determination.  The *Saget* parties have already completed a bench trial and submitted their respective findings of facts and conclusions of law, and now await the Court's judgment.  *See Saget*, Minute Entry, January 10, 2019 (noting that "Bench Trial completed on 1/10/2019"); *Saget*, ECF Nos. 135, 154.  In *Centro Presente v. Trump*, No. 1:18-CV-10340 (D. Mass.), the parties are in the middle of discovery on plaintiffs' claims that include Fifth Amendment challenges to the decision to end TPS for Haiti (as well as El Salvador and Honduras), with discovery set to end on  May 17, 2019.[3]  Thus, this is the *fourth* case alleging that the Haiti TPS determination violates the Fifth Amendment, and the other three cases are at much more advanced stages of litigation.[4]

---

[3] In *Centro Presente,* the Court granted the parties' joint motion to stay depositions in that case pending disposition by "either (a) the disposition of the Government's appeal of the preliminary injunction in *Ramos v. Nielsen*, No. 18-16981 ("*Ramos* appeal"), by the assigned three-judge panel of the U.S. Court of Appeals for the Ninth Circuit, or (b) other order of this Court."  *See Centro Presente* ECF. No. 80 81.

[4] In another case, *Bhattarai v. Nielsen*, No. 3:19-cv-731-EMC (N.D. Cal.), Plaintiffs challenged the TPS terminations for Honduras and Nepal on Fifth Amendment and other grounds. The parties in that case have entered an agreement staying district court proceedings and the terminations of those countries' TPS pending the appellate resolution of *Ramos*, recognizing that their "disputes

**ARGUMENT**

I.    **Acting Secretary Duke's determination ending TPS for Haiti is already enjoined, so this duplicative litigation would consume judicial and party resources with no offsetting gains for Plaintiffs.**

This Court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936).   That power applies "especially in cases of extraordinary public moment," when "a plaintiff may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted." *Clinton*, 520 U.S. at 707 (citation omitted).  Where a stay pending resolution of some other matter is considered, the court need not find that the two cases possess identical issues or that resolution of one will control the other; a finding that the cases present substantially similar issues is sufficient.  *See Landis*, 299 U.S. at 254.

In exercising their discretion, courts weigh the following factors:  "(1) the interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party." *Cunningham v. Homeside Fin., LLC*, Civ. No. MJG-17-2088, 2017 WL 5970719, at *2 (D. Md. Dec. 1, 2017).  Here, these factors weigh heavily in favor of staying all district court proceedings pending the conclusion of appellate proceedings in *Ramos* (to include any Supreme Court review), or at least until the disposition of the Government's appeal by the Ninth Circuit's assigned three-judge panel.

---

in this case are similar to, and will be informed by, the dispute being litigated in *Ramos*[,]" and that doing so served the "interests of justice and judicial economy." *Bhattarai*, ECF No. 23 ¶ 6.[4] And finally, the plaintiffs in *Casa de Maryland v. Trump*, No. 8:18-CV-845-GJH (D. Md.), are challenging the TPS determination for El Salvador, with discovery set to close May 17, 2019.  *See Casa de Maryland*, ECF No. 57.

A.   A stay would promote judicial efficiency and serve the public interest.

A stay in this case would promote judicial efficiency and conserve finite public resources, because the Ninth Circuit's review of the *Ramos* preliminary injunction (and, potentially, subsequent Supreme Court review) could alter the trajectory of this case.  Here, Plaintiffs argue that the Acting Secretary's decision to terminate TPS for Haiti violates the Fifth Amendment claim based on animus and irrationality, Am. Compl. ¶¶ 108-120, ECF No. 30; *see also* Mem. in Opp'n to Defs.' Mot. to Dismiss at 18-35, ECF No. 45, and the *Ramos* district court found that type of claim to "justify[] the issuance of a preliminary injunction on an independent ground." *See Ramos*, 336 F. Supp. 3d at 1098.  Accordingly, it seems likely that a Ninth Circuit decision vacating the preliminary injunction would address a claim very similar to Plaintiffs.  *See Allstate Ins. Co. v. Hemingway Homes LLC*, No. 12-CV-00744-AW, 2012 WL 4748089, at *3 (D. Md. Oct. 3, 2012) (staying action because it "promote[d] judicial economy by preventing the same set of facts from being litigated in two separate forums"); *Yearwood v. Johnson & Johnson, Inc.*, Civ. No. RDB-12-1374, 2012 WL 2520865, at *4 (D. Md. June 27, 2012) ("Granting a stay of proceedings pending transfer to MDL 2244 will promote judicial efficiency and consistent adjudication[.]"); *Catskill Mountains Chapter of Trout Unlimited, Inc. v. EPA*, 630 F. Supp. 2d 295, 306 (S.D.N.Y. 2009) ("By conserving judicial resources, a stay will serve not only the interest of the courts, but also the interests of the Parties, the nonparties, and the public in 'an orderly and efficient use of judicial resources.'" (citation omitted)).  Without a stay, there is a substantial risk of duplication of proceedings and a waste of judicial resources.  *See Tastee Treats, Inc. v. U.S. Fid. & Guar. Co.*, No. 5:07-cv-00338, 2009 WL 37188, at *2 (S.D. W. Va. Jan. 7, 2009) ("Given the need to conserve judicial resources, the common questions of fact in this action and the state court action favor staying the present action.").

While appellate proceedings in *Ramos* will unfold in the Ninth Circuit rather than the Fourth Circuit, the nationwide implications of the *Ramos* preliminary injunction and the progress of that litigation may well "have an impact on the Court's path forward in this case[,]" including by potentially obviating the need for further proceedings in this suit.  *See Naegele v. Albers*, 940 F. Supp. 2d 1, 9 (D.D.C. 2013) (opining that it was appropriate to "stay the entirety of the[] proceedings" in federal court "pending the outcome of [plaintiff's] appellate litigation in California").  Courts in this circuit have repeatedly granted stay motions pending developments in cases being litigated elsewhere.  *See, e.g.*, *IRAP v. Trump*, 323 F. Supp. 3d 726, 736 (D. Md. 2018); *Benisek v. Lamone*, 266 F. Supp. 3d 799, 815 (D. Md. 2017), *aff'd*, 138 S. Ct. 1942 (2018); *Sam Yang (U.S.A.), Inc. v. ENI Dist., Inc.*, Civ. No. JKB-16-2958, 2016 WL 7188447, at \*4 (D. Md. Dec. 12, 2016); *Mey v. Got Warranty, Inc.*, No. 5:15-CV-101, 2016 WL 1122092, at \*3 (N.D. W. Va. Mar. 22, 2016); *Chruby v. Global Tel\*Link Corp.*, 119 F. Supp. 3d 395, 398 (E.D. Va. 2015). Moreover, a stay here would serve the interests of non-parties and the public, as there is a "strong public interest in avoiding time-consuming and unnecessary duplicative litigation." *Trikona Advisors Ltd. v. Kai-Lin Chuang*, No. 12-CV-3886, 2013 WL 1182960, at \*1 (E.D.N.Y. Mar. 20, 2013) (granting motion to stay pending resolution of a related case).

B.      A stay would not harm Plaintiffs.

Plaintiffs in *Ramos* are challenging four TPS determinations, including the sole determination that Plaintiffs challenge here—Acting Secretary Duke's termination Haiti's TPS designation.  While the Government respectfully disagrees with the *Ramos* preliminary injunction order, it acknowledges that the Northern District of California's ruling currently enjoins the Government from implementing the former Acting Secretary's decision to terminate Haiti's TPS designation, and does so on a nationwide basis.  And as explained in the March 1 Federal Register notice, absent a final, superseding, non-appealable order, the Government will continue to extend

the validity of TPS-related documentation for Haitian TPS beneficiaries in response to the *Ramos* court's directive that Defendants "ensure the continued validity of documents that prove lawful status and employment authorization for TPS holders." *Ramos*, 336 F. Supp. 3d at 1108-09.  Thus, Plaintiffs here would not be burdened by a stay, since they currently have in every practical sense the relief they are seeking—an injunction prohibiting the Government from implementing the termination of TPS for Haiti.  Further, depending on how the district court rules in *Saget* following its now-completed bench trial concerning the Haiti TPS decision, which includes, *inter alia*, the same claim brought forth in the instant case, the plaintiffs in this case might have further protections regardless of what the Ninth Circuit decides in *Ramos*.  At the very least, this Court could stay this action until at least there is a decision in *Saget* if the *Ramos* appeal is still pending.

Importantly, even if the Ninth Circuit were to vacate the *Ramos* preliminary injunction order and there is no corresponding injunction in *Saget*, there would be no immediate consequence for Haitian TPS beneficiaries.  The March 1 notice permits Secretary Nielsen's TPS determination to go into effect only upon "120 days from the effective date of . . . a superseding, final order[.]" 84 Fed. Reg. at 7,105; *see also Ramos*, ECF No. 138, ¶ 6.  And that clock cannot start to run until the order until the mandate issues to the district court, *Ramos*, ECF No. 138, ¶ 6, which would take at least 52 *additional* days from a panel decision.  *See* F.R.A.P. 40(a)(1) (permitting petition for panel rehearing to be filed within 45 days after entry of judgment); F.R.A.P. 41(b) (providing that mandate will not issue until "7 days after the time to file a petition for rehearing expires, or 7 days after entry of an order denying a timely petition for panel rehearing, petition for rehearing en banc, or motion for stay of mandate, whichever is later").[5]  Thus, the soonest the Secretary's termination decision could take effect would be nearly six months after any decision by the panel in the Ninth

---

[5] Both rules contemplate that these timeframes may be altered by other order of the court.

Circuit to vacate the *Ramos* preliminary injunction.  Whatever procedural path the *Ramos* litigation takes, Plaintiffs here should have ample opportunity to protect their interests in this Court following any decision vacating the preliminary injunction order in *Ramos.*

Defendants' motion for a stay is not meant to constrain Plaintiffs' ability to litigate their case, but rather is a good faith attempt to conserve resources.  Should this Court grant a stay, Defendants remain prepared to produce, subject to any appropriate protective order for covered material, the documents that have been produced in other TPS litigation.[6]  That discovery amounts to approximately 11,000 produced documents, in response to approximately 100 requests for production in four other TPS cases, three of which include a specific challenge to the decision to terminate Haiti's TPS.  These productions comprise over 86,000 pages collected from approximately 25 custodians and several discrete record locations.[7]  These documents include several communications between officials at the White House and DHS; notes written by Acting Secretary Duke herself detailing her TPS decision-making process, and other sensitive materials. During the pendency of the stay, Plaintiffs could review that universe, as well as other available material such as the transcripts from numerous depositions of individuals engaged in the decision-making process, to formulate a plan to timely and efficiently litigate this matter in a streamlined manner upon the lifting of the stay.   Accordingly, Plaintiffs cannot plausibly claim that they would be harmed by a stay.

---

[6] Defendants do not waive their argument that this Court should limit its review to the administrative record, *see infra* Section II, but are willing to provide this already-produced material to Plaintiffs to streamline this action should this Court ultimately rule against Defendants' record-review arguments upon the lifting of the stay.

[7] Of the over 86,000 produced pages thus far, Defendants estimate that approximately 23,000 pages were included in more than one production.  There are a variety of reasons for this overlap, including, for example, changes in redactions or documents being produced both as standalones and as parts of email families.  But Defendants also expect these numbers to rise as they continue to produce documents in other TPS litigation.

C.    The Government would be needlessly burdened absent a stay.

Finally, "the possibility of a slight delay for the Plaintiffs is far outweighed by the possible prejudice faced by the Defendants if this case is not stayed" pending the *Ramos* appeal, as Defendants would be subject "to the significant burden of duplicative litigation[,]" and would "be prejudiced by additional discovery or motion practice that could create duplicative and potentially inconsistent obligations." *Yearwood*, 2012 WL 2520865, at *4 (citation omitted).

Moreover, as the Government explained in its motion to dismiss, the Government respectfully submits that this Court does not have subject-matter jurisdiction over any of Plaintiffs' claims because judicial review has been precluded by 8 U.S.C. § 1254a(b)(5)(A).  The Government raised the same jurisdictional argument in *Ramos*, and that issue necessarily will be addressed on appeal.  "If this Court were to charge ahead with all proceedings necessary to bring the case to final judgment and it were later determined that this Court lacked jurisdiction," it "would have wasted resources of the parties and the Court." *Riverkeeper, Inc. v. EPA*, No. 06 Civ. 12987(PKC), 2007 WL 4208757, at *2 (S.D.N.Y 2007).  In any event, even assuming this Court has subject-matter jurisdiction over Plaintiffs' claims, proceeding with this litigation while the appeal in *Ramos* remains pending would impose unnecessary litigation burdens on the Government without providing any additional relief to Plaintiffs in the interim.

Accordingly, the Government respectfully requests that this Court stay this action pending Ninth Circuit—and any Supreme Court—review of the preliminary injunction order issued in the parallel *Ramos* matter.

## II.    Absent a stay, this Court's review should be limited to the administrative record.

If this Court does not stay these proceedings, then it should order, pursuant to bedrock APA principles, that judicial review is limited to the certified administrative record, and that Plaintiffs cannot invoke any of the rare exceptions to justify discovery in this APA case.  Indeed, this

threshold matter—which should be decided before any discovery—further weighs in favor a stay pending the *Ramos* appeal, as such a stay should provide sufficient time for the Supreme Court's anticipated ruling in *Department of Commerce v. U.S. District Court for the Southern District of New York*, No. 18-966, 2019 WL 5595998 (U.S. 2019).  That case, which concerns the Secretary of Commerce's decision to add a citizenship question to the 2020 Census, is expected later this Term and may clarify those circumstances in which a district court may order discovery beyond the administrative record in APA cases.  In particular, the Supreme Court granted cert on "[w]hether, in an action seeking to set aside agency action under the APA, a district court may order discovery outside the administrative record to probe the mental processes of the agency decisionmaker—including by compelling the testimony of high-ranking executive branch officials—without a strong showing that the decisionmaker disbelieved the objective reasons in the administrative record, irreversibly prejudged the issue, or acted on a legally forbidden basis." *Dep't of Commerce*, 2019 WL 55959998, § *i, Questions Presented.  It would seem most prudent to at least wait for further guidance from the Supreme Court on this subject.[8]

In any event, the APA provides the exclusive mechanism for asserting claims for declaratory and injunctive relief challenging final agency action of the sort at issue here, regardless as to whether those claims assert statutory violations, constitutional violations, or both.  Section 706 of the APA commands that "the reviewing court shall . . . interpret constitutional . . . provisions," and shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . contrary to constitutional right, power, privilege, or immunity[.]"  5 U.S.C. § 706(2). Courts have therefore recognized that Section 706, by its plain language, limits the review of constitutional claims to the administrative record.  *See Chiayu Chang v. USCIS*, 254 F. Supp. 3d

---

[8] Although other courts have ordered extra-record discovery in recent TPS litigation, Defendants respectfully disagree with those orders based on the case law described in this section.

160, 161 (D.D.C. 2017); *see also Harkness v. Sec'y of Navy*, 858 F.3d 437, 451 n.9 (6th Cir. 2017)

(noting that a constitutional claim "is properly reviewed on the administrative record"), *cert.*

*denied*, 138 S. Ct. 2648 (2018) (mem.); *Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv.*,

58 F. Supp. 3d 1191, 1232 (D.N.M. 2014) ("The presence of a constitutional claim does not take

a court's review outside of the APA . . . and courts must . . . respect agency fact-finding and the

administrative record when reviewing agency action for constitutional infirmities . . . ."); *accord*

*Evans v. Salazar*, 2010 WL 11565108, at *2 (W.D. Wash. July 7, 2010).  To conclude otherwise

would "incentivize every unsuccessful party to agency action to allege . . . constitutional violations

[in order] to trade in the APA's restrictive procedures for the more even-handed ones of the Federal

Rules of Civil Procedure."  *Jarita Mesa Livestock*, 58 F. Supp. 3d at 1238; *see* Fed. R. Civ. P.

26(a)(1)(B)(i) (exempting "an action for review on an administrative record" from initial

disclosures and discovery).

Because Plaintiffs' action, if it may proceed at all, must proceed under the APA, the Court

is presumptively limited to reviewing the administrative record compiled by DHS, which the

agency submits as the complete record of its proceedings.  Section 706 of the APA states that, "[i]n

making the foregoing determination[], the court shall review the whole record or those parts of it

cited by a party[.]"  5 U.S.C. § 706.  Under the record rule, except in narrow circumstances, the

Court may not base its review on a record supplemented with documents created in litigation or

extracted through civil discovery.  And Plaintiffs have not met, and cannot meet, their significant

evidentiary burden of establishing that any of the rare exceptions to the record rule should apply

in this litigation.  Thus, the validity of the Haiti TPS determination stands or falls based "on the

record the agency presents to the reviewing court[,]" *Fla. Power & Light Co. v. Lorion*, 470 U.S.

729, 744 (1985).  "The reviewing court in such a case generally is not authorized to conduct a *de*

*novo* evaluation of the record or to 'reach its own conclusions' regarding the subject matter before the agency." *QinetiQ U.S. Holdings, Inc. v. Comm'r of Internal Revenue*, 845 F.3d 555, 560 (4th Cir. 2017) (citation omitted), *cert. denied*, 138 S. Ct. 299 (2017) (mem.).

The APA does not provide for review of extra-record evidence, such as information generated through interrogatories or depositions. *See Tafas v. Dudas*, 530 F. Supp. 2d 786, 794 (E.D. Va. 2008) ("There is a strong presumption against general discovery into administrative proceedings . . . ." (quoting *NVE, Inc. v. HHS*, 436 F.3d 182, 195 (3d Cir. 2006)); *see also, e.g.*, *Common Sense Salmon Recovery v. Evans*, 217 F. Supp. 2d 17, 20 (D.D.C. 2002) ("In the administrative law context, courts uniformly have held that discovery typically is not permitted."). Rather, the APA operates as a bar to discovery by requiring the Court to look no further for evidence than the administrative record on which the agency based its decision. *See Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984) ("If a court is to review an agency's action fairly, it should have before it neither more nor less information than did the agency when it made its decision."). Indeed, the introduction of additional evidence outside the administrative record subverts the administrative process. *See Asarco, Inc. v. EPA*, 616 F.2d 1153, 1160 (9th Cir. 1980) ("When a reviewing court considers evidence that was not before the agency, it inevitably leads the reviewing court to substitute its [own] judgment for that of the agency.").

Only in cases where there is a "strong showing of bad faith or improper behavior" may a district court allow for a more expansive scope of review beyond the record. *See, e.g.*, *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971), *abrogated in part on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977); *Outdoor Amusement Bus. Ass'n, Inc. v. DHS*, Civ. No. ELH-16-1015, 2017 WL 3189446, at *18 (D. Md. July 27, 2017) ("[T]o overcome the strong presumption against discovery, Plaintiffs must make a strong showing of bias or

13

incompleteness." (alteration in original) (citation omitted)). "These exceptions apply only under extraordinary circumstances, and are not to be casually invoked unless the party seeking to depart from the record can make a strong showing that the specific extra-record material falls within one of the limited exceptions." *Voyageurs Nat'l Park Ass'n v. Norton*, 381 F.3d 759, 766 (8th Cir. 2004). Absent such a strong showing, a court may not "entertain an inquiry as to the extent of [the Secretary's] investigation[,]" "the methods by which [s]he reached h[er] determination[,]" or "the relative participation of the Secretary and h[er] subordinates." *Nat'l Nutritional Foods Ass'n v. FDA*, 491 F.2d 1141, 1145 (2d Cir. 1974) ); *Amfac Resorts, LLC v. U.S. Dep't of the Interior*, 143 F. Supp. 2d 7, 12 (D.D.C. 2001) ("[A] party must provide good reason to believe that discovery will uncover evidence relevant to the Court's decision to look beyond the record. Thus, a party must make a significant showing—variously described as a 'strong,' 'substantial,' or 'prima facie' showing—that it will find material in the agency's possession indicative of bad faith or an incomplete record." (citations omitted)). Because Plaintiffs have not made the necessary strong showing that Acting Secretary Duke's decision was in bad faith to overcome the default constraints of record review, the Court should not permit any extra-record discovery.

## III.   Even if, *arguendo*, the Court finds extra-record discovery appropriate, any such discovery should be narrow in scope.

Even if this Court were to both (1) decline to stay this action pending conclusion of the *Ramos* appellate proceedings and (2) permit extra-record discovery, Plaintiffs are not entitled to the full panoply of discovery tools ordinarily available under the Federal Rules of Civil Procedure. Even courts that have permitted discovery in an APA case have recognized that "the discovery should not transform the litigation into one involving all the liberal discovery available under the Federal Rules." *Ali v. Pompeo*, No. 16-CV-3691-KAM-SJB, 2018 WL 2058152, at *4 (E.D.N.Y. May 2, 2018); *see Int'l Jr. Coll. of Bus. & Tech., Inc. v. Duncan*, 937 F. Supp. 2d 202, 204-05

(D.P.R. 2012) ("[T]he narrowness of the APA action for judicial review weighs heavily against discovery."), *aff'd*, 802 F.3d 99 (1st Cir. 2015).  Instead, in such unusual circumstances, the Court must permit only so much discovery as is necessary to effectuate the Court's judicial review.  *See Overton Park*, 401 U.S. at 420; *see also Milanes v. Chertoff*, No. 08 Civ. 2354(LMM), 2008 WL 2073420, at *2 (S.D.N.Y. May 13, 2008) ("The Court expects any party seeking discovery beyond the . . . administrative records . . . to show that the discovery it seeks is necessary for a particular reason, *e.g.*, to fill a gap in an administrative record . . . .").

Across the TPS cases in which discovery has already taken place (*i.e.*, *Ramos*, *Saget*, *Centro Presente, and Casa de Maryland*), the Government has produced approximately 11,000 documents, including deliberative materials and materials reflecting White House communications (such as handwritten notes by the former Acting Secretary of Homeland Security memorializing her conversations with White House officials, and the agenda for a White House principals' committee meeting).  Any document production in *NAACP* should be limited to that vast universe of materials.  Similarly, Plaintiffs here may purchase transcripts of depositions (including two Rule 30(b)(6) depositions) that have occurred in *Ramos* and *Saget*, but should not be permitted to further stretch the record for review with additional depositions.  Any other discovery, to include interrogatories and requests for admission, would be needlessly intrusive, burdensome, and inappropriate in this APA case.

## CONCLUSION

For the foregoing reasons, the Court should stay this action pending final appellate review of the preliminary injunction order in *Ramos*.  If the Court declines to do so, it should limit its review to the certified administrative record and rule that no extra-record discovery shall be permitted in this action.

Dated:  April 8, 2019         Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

JOHN R. TYLER
Assistant Branch Director

*/s/ Adam D. Kirschner*
ADAM D. KIRSCHNER
IL Bar No. 6286601
Senior Trial Counsel
     United States Department of JusticeCivil
     Division, Federal Programs Branch
1100 L Street NW, Room 11020
Washington, DC 20530
     Tel.:    (202) 353-9265
     Fax:    (202) 616-8460
E-mail:   adam.kirschner@usdoj.gov

Mailing Address:
Post Office Box 883
Washington, D.C. 20044

Courier Address:
1100 L Street NW, Room 11020
Washington, D.C. 20005

*Counsel for Defendants*

## **LOCAL RULE 104.7 CERTIFICATION**

I hereby that I conferred counsel for Plaintiffs, about this motion to stay or, in the alternative, to limit discovery.   Plaintiffs' counsel advised that Plaintiffs would oppose the Government's anticipated motion.

Dated:  April 8, 2019                                        */s/ Adam D. Kirschner*
                                                                      ADAM D. KIRSCHNER