IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NATIONAL ASSOCIATION FOR THE             :
ADVANCEMENT OF COLORED PEOPLE,
et al.                                   :

   v.                                    :   Civil Action No. DKC 18-0239

                                         :
UNITED STATES DEPARTMENT OF
HOMELAND SECURITY, et al.                :

**MEMORANDUM OPINION**

Presently pending and ready for resolution is the Motion to Stay, or in the Alternative, to Confine Discovery to the Administrative Record filed by Defendants United States Department of Homeland Security ("DHS"), former acting DHS Secretary Elaine Costanzo Duke, and former DHS Secretary Kristjen Nielsen. (ECF No. 73). The issues have been briefed, and the court now rules, no further hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to stay will be granted.

I. **Background**

The underlying factual and procedural history of this case is recited in the court's March 12, 2019 Memorandum Opinion, (ECF No. 67), and will not be repeated here. On April 8, 2019, Defendants filed a Motion for Stay, or in the Alternative, to Confine Discovery to the Administrative Record. (ECF No. 73). As that motion recounts, actions taken in parallel litigation involving the Temporary Protected Status ("TPS") of Haiti arguably militate

in favor of staying the instant case. In particular, final appellate review of the preliminary injunction issued by the United States District Court for the Northern District of California in *Ramos v. Nielsen*, No. 3:18-CV-1554, remains pending.[1] Similar litigation is also ongoing in the United States District Court for the Eastern District of New York, *Saget v. Trump*, 18 Civ. 1599,[2] and the United States District Court for the District of Massachusetts, *Centro Presente v. DHS*, No. 18 Civ. 10340.

Plaintiffs in each of these cases, as well as the instant case, seek roughly the same outcome: "a permanent injunction, requiring the Government to maintain TPS unless and until a fair process untainted by racial animus demonstrates that conditions in Haiti would allow the country to reabsorb Haitians with TPS." (ECF No. 76, at 18). The district court in *Ramos*, while not reaching a decision directly on the merits, found that there are "at the very least, serious questions going to the merits" of the equal protection claim that, "[c]ombined with a balance of hardships

---

[1] The Ninth Circuit held oral argument on August 14, 2019. On August 21, 2019, the court ordered supplemental briefing on the scope of discovery, and vacated submission of the case. That briefing appears to be complete. *Ramos v. Nielson*, No. 18-16981, United States Court of Appeals for the Ninth Circuit.

[2] The district court also issued a nationwide injunction in *Saget v. Trump.* An appeal is pending in the Second Circuit, with oral argument anticipated during the week of May 26, 2020. *Saget v. Trump*, No. 19-1685, United States Court of Appeals for the Second Circuit.

that tips sharply in Plaintiffs' favor," warranted a preliminary injunction. *Ramos v. Nielsen*, 336 F. Supp. 3d 1075, 1105 (N.D. Cal. 2018). The court in *Saget* reached the same conclusion. *Saget v. Trump*, 375 F.Supp.3d 280, 378-79 (E.D.N.Y. 2019).

The preliminary injunction order in *Ramos* reads as follows:

> 1. It is hereby ORDERED THAT Defendants, their officers, agents, employees, representatives, and all persons acting in concert or participating with them, are ENJOINED AND RESTRAINED from engaging in, committing, or performing, directly or indirectly, by any means whatsoever, implementation and/or enforcement of the decisions to terminate TPS for Sudan, Haiti, El Salvador, and Nicaragua pending resolution of this case on the merits.
>
> 2. It is further ORDERED that Defendants shall take all administrative actions needed to preserve the status quo pending completion of discovery and a ruling on the merits of the action, including all steps needed to ensure the continued validity of documents that prove lawful status and employment authorization for TPS holders. Defendants shall report to the Court within fifteen (15) days of this Order on the administrative steps taken to comply with this paragraph and otherwise preserve the status quo.
>
> The preliminary injunction shall take effect immediately and shall remain in effect pending resolution of this case on the merits or further order of this Court.

*Ramos*, 336 F.Supp.3d at 1108-09.

In light of the decisions in *Ramos* and *Saget*, Defendants now seek to stay the instant action pending the conclusion of appellate proceedings one or both of those cases. (ECF No. 86, at 5). In

3

the alternative, Defendants seek to limit discovery to the administrative record. In addition to filing their motion for a stay, Defendants have also answered Plaintiffs' complaint. (ECF No. 74). On April 24, 2019, the court held a recorded telephone conference to discuss developments in the parallel litigations, (ECF No. 77), and on July 23, 2019, the court held a second call to discuss updates in the discovery process, (ECF No. 87). Both parties supplemented their papers on the substantive legal issues in advance of the second call. (ECF Nos. 85, 86). Finally, on November 6, 2019, Defendants filed a Notice of Recent Authority with the court, reporting that termination of TPS for Haiti is dependent on the conclusion of appellate proceedings in both the Ninth and Second Circuits. (ECF No. 88). The court has, informally, deferred resolution of this motion. In the meantime, the parties executed a protective order, enabling the disclosure of written discovery produced in the other cases.

In light of the passage of time, and the fact that the Ninth Circuit did not rule immediately after oral argument and has directed further proceedings concerning the scope of discovery, and the schedule in the Second Circuit case, however, it is now appropriate to consider the pending motion and make a more formal determination. Furthermore, the extraordinary crisis presented by the COVID-19 pandemic counsels in favor of pausing these proceedings officially.

**II. Motion to Stay**

**A. Legal Standard**

Another judge in this court recently had cause to evaluate and apply the standard for issuing a stay in *International Refugee Assistance Project v. Trump*, 323 F.Supp.3d 726 (D.Md. 2018) (hereinafter "*IRAP*"). Judge Chuang provided a thoughtful and thorough analysis of a "Motion to Stay Proceedings Pending Resolution of Preliminary-Injunction Appeals" in a case of similarly "extraordinary public moment." *Id*. at 731 (quoting *Clinton v. Jones*, 520 U.S. 681, 707 (1997)). The *IRAP* decision dealt with President Trump's efforts "to ban the entry of nationals from certain designated countries into the United States." *Id*. at 729. There, as here, a United States District Court had issued a nationwide preliminary injunction blocking the implementation of a new national policy (there, an executive order; here, a decision by DHS to revoke TPS for Haiti). *Id*.

"[T]he power to stay proceedings is incidental to the power in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In cases of "extraordinary public moment," such as this one, which deal with national policy decisions and seek nationwide injunctive relief, the parties "may be required to submit to delay not immoderate in extent and not oppressive in its consequences if

5

the public welfare or convenience will thereby be promoted." *Clinton v. Jones*, 520 U.S. 681, 707 (1997) (quoting *Landis*, 299 U.S. at 256). Nonetheless, the moving party bears the burden of persuasion and must "justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983).

The court in *IRAP* synthesized the relevant factors for determining the propriety of a stay as follows:

> (1) the impact on the orderly course of justice, sometimes referred to as judicial economy, measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected from a stay; (2) the hardship to the moving party if the case is not stayed; and (3) the potential damage or prejudice to the non-moving party if a stay is granted.

*IRAP*, 323 F.Supp.3d at 731 (collecting cases).

**B. Judicial Economy**

In their initial stay request, Defendants suggest that "the Ninth Circuit's review of the Ramos preliminary injunction (and, potentially, subsequent Supreme Court review) could alter the trajectory of this case." (ECF No. 73, at 6). That is, perhaps, an overly dramatic prediction. Decisions in this case, by both the parties and the court, might be affected by an appellate decision, albeit not directly. Ordinarily, as Plaintiffs point out: "an out-of-circuit decision vacating a preliminary injunction

6

would not provide any controlling guidance to this Court." (ECF No. 76, at 9). On the other hand, the rationale for any appellate decision may well be persuasive authority that influences this case. Particularly here, where the several cases are already intertwined in discovery matters, it is more efficient to coordinate proceedings.

The circumstances in *IRAP*, of course, were slightly different. First, *IRAP* dealt with appellate review in the Supreme Court. Second, the issues pending on appeal in *IRAP* bore a more direct relationship to the district court action. For example, in *IRAP*, the Supreme Court was to consider, among other things, the justiciability of the dispute. *Id*. at 732. While the issues on appeal at the Ninth and Second Circuits contain no such potentially binding threshold issues which would provide guidance to this court, the Ninth Circuit has recently indicated that it will consider, and maybe resolve, an issue that this court will have to face immediately if it denies a further stay: the scope of permissible discovery.

Plaintiffs are correct to note that "[t]he Government does not cite a single case where a stay was granted because a different plaintiff challenged the same Government decision and had won a preliminary injunction from a district court in another circuit, which the Government was appealing." (ECF No. 76, at 9). That

7

does not necessarily mean, however, that a stay should *never* be granted under such circumstances.

For a time, proceedings in the various courts were occurring somewhat simultaneously, with this case somewhat behind the others. Counsel are constantly aware of the events in the other cases, and updating their positions as required. Defendants point out that:

> much of what Plaintiffs seek in discovery would give rise to issues that are being litigated in other ongoing TPS litigation. *See Tastee Treats, Inc. v. U.S. Fid. & Guar. Co.*, No. 5:07-cv-00338, 2009 WL 37188, at *2 (S.D.W. Va. Jan. 7, 2009) ("Given the need to conserve judicial resources, the common questions of fact in this action and the state court action favor staying the present action."). For example, the plaintiffs in *Casa de Maryland* have indicated that they currently intend to move to compel discovery on the White House after the parties complete their meet-and-confer on other discovery issues. *See Casa de Maryland v. Trump*, No. 8:18-CV845-GJH (D. Md.) (ECF No. 60). Although that case involves the termination of TPS for El Salvador, it would certainly inform proceedings in this case if the Fourth Circuit is ultimately called upon to address such a discovery dispute on appeal, including potentially on mandamus. *See Cheney v. U.S. District Court for the District of Columbia*, 542 U.S. 367 (2004) (overruling the D.C. Circuit's denial of mandamus to address discovery on the White House). . .
>
> The plaintiffs in *Centro Presente* moved to compel discovery on the White House but the district court deferred ruling on that motion until all discovery on the Department of Homeland Security is completed following the *Ramos* appeal. *See Centro Presente v. Trump*,

>No. 1:18-CV-10340 (D. Mass.) (ECF No. 89). In
>both *Casa* and *Centro Presente*, there are also
>still open questions about depositions that
>have the potential of overlapping with the
>issues Plaintiffs raise in this case.

(ECF No. 86, at 4, 4 n.3).

    **C.    Harm to the Government**

Somewhat confusingly, Defendants suggest that the Government will be harmed if this court does not grant a stay because the issue of justiciability "necessarily will be addressed on appeal," and this issue could render the entire litigation a waste of time and resources. (ECF No. 73, at 10). This concern is properly addressed to the issue of *judicial economy*, not of harm to the government: should any higher court determine that this dispute is not justiciable, both parties would have been harmed equally through the waste of time and resources. What is more, the only issue of "justiciability" which the Ninth Circuit appears "necessarily" committed to ruling on is with regard to Plaintiff's Administrative Procedure Act ("APA") claim. *See*, Brief for Appellants, Ramos v. Nielsen, No. 18-16981 (9th Cir. Nov. 29, 2018). The parties have already briefed, and this court has already ruled on, the justiciability of the APA claim. (ECF No. 67). Therefore, the parties have *already* devoted significant time and resources to this claim.

Unless the Supreme Court or Fourth Circuit overturn this court's holding that § 1254a(b)(5)(A) does not preclude judicial

9

review, the course of this case will not be fundamentally altered. A Ninth Circuit decision (or one by the Second Circuit) on "justiciability" on its own will have little impact. Given that numerous federal courts have found Plaintiffs' claim to be justiciable, Defendants' reliance on a prospective Supreme Court decision to the contrary is too thin a reed to warrant a stay on its own. *See*, *Centro Presente*, 332 F.Supp.3d at 407; *Ramos v. Nielsen*, 321 F.Supp.3d 1083, 1105-06 (N.D. Cal. 2018); *Casa de Maryland*, 355 F.Supp.3d 307 (D.Md. 2018); *Saget*, 345 F.Supp.3d at 296.

Finally, Defendants argue that the government "would be subject to the significant burden of duplicative litigation and would be prejudiced by additional discovery or motion practice that could create duplicative and potentially inconsistent obligations." (ECF No. 73, at 10) (internal citations and quotations omitted). Plaintiffs have made clear that they will seek vigorously to expand the scope of discovery and, whether duplicative of other litigation or not, this is not the time to resume active consideration of those issues.

**D. Harm to the Plaintiffs**

Again as in *IRAP*, "[t]he potential harm or prejudice to the Plaintiffs resulting from a stay is more significant." *Id*. at 735-36. Defendants point out that, in compliance with the preliminary injunction issued in *Ramos*, "DHS published a Federal

Register notice on March 1, 2019, announcing that the TPS designation of Haiti (as well the TPS designations for Sudan, Nicaragua, and El Salvador) "will remain in effect . . . so long as the preliminary injunction" in Ramos "remains in effect." (ECF No. 73, at 2-3) (citing 84 Fed. Reg. 7,103-01, 7,103). That same notice only permits the contested TPS designation to go into effect "120 days from the effective date of . . . a superseding, final order[.]" 84 Fed. Reg. at 7,105. Defendants suggest that additional procedural steps would further delay any implementation, such that "the soonest the Secretary's termination decision could take effect would be nearly six months after any decision by the panel in the Ninth Circuit to vacate the Ramos preliminary injunction." (ECF No. 73, at 8-9).[3]

Regardless of whether this estimate of the delay is accurate, the question is not, as Defendants would have it, simply whether Plaintiffs will still "have ample opportunity to protect their interests in this Court following any decision vacating the preliminary injunction order in Ramos." (ECF No. 73, at 9). The question is, at least in part, whether Plaintiffs' interests will be *harmed*; and the concerns Plaintiffs have raised about potential harms are convincing. As both Plaintiffs and the court in *Saget* have noted, there is "broad anxiety in the Haitian community" that

---

[3] As noted before, the termination of TPS presently would follow vacating of both the *Ramos* and the *Saget* injunctions.

11

will only dissipate on the final resolution of their TPS status. (ECF No. 76, at 10-11); *Saget*, 375 F.Supp.3d at 67. Plaintiff Haitian Women for Haitian Refugees has also been forced to divert resources to more thoroughly address the concerns of TPS holders pending a final outcome in the litigation surrounding TPS status. (ECF No. 76, at 11). Finally, at least one court in this district has previously found that the type of discovery delay implicated in a potential stay such as this one constitutes a harm to plaintiffs. *Nero v. Mosby*, No. CV 16-1304, 2017 WL 1048259, at *2 (D.Md. Mar. 20, 2017). These concerns of Plaintiffs' weigh slightly in favor of denying Defendants' motion to stay.

**E. Balance of the Factors**

The events of the last few weeks concerning the developing COVID-19 pandemic put the factors in a different posture than would apply in normal times. Court proceedings are at a virtual standstill. Courts, including this one, have entered orders suspending court proceedings and extending filing deadlines. The latest order in this court continues the stay until April 24, 2020. The health authorities throughout the country counsel against personal contact and advocate "social distancing." Litigation has become, obviously, more difficult. The discovery disputes already presented in other cases will arise here, with Plaintiffs likely to seek in-person depositions. It makes no sense to require the parties in this case to undertake further action, whether formal

discovery or motions practice, in the current environment.  At least until the two appellate courts have a chance to consider the matters before them, it behooves us to continue the stay as a formal matter.  The court finds it appropriate to stay proceedings in this action a little longer and will enter an order staying this case until June 1, 2020, at which time the matter can be revisited.

**III. Conclusion**

    For the foregoing reasons, the motion to stay filed by Defendants will be granted.  A separate order will follow.

                                                  /s/
                                 DEBORAH K. CHASANOW
                                 United States District Judge